UNITED STATES v. JOSE.

(Circuit Court, D. Washington, N. D. October 12, 1894.)

No. 257.

1. CONTEMPT—DEGREE OF PROOF REQUIRED.

Accusations for contempt must be supported by evidence sufficient to convince the mind of the trior, beyond a reasonable doubt, of the actual guilt of the accused; and every element of the offense, including a criminal intent, must be proved by evidence or circumstances warranting an inference of the necessary facts.

2. SAME—INTERFERENCE WITH PROPERTY IN RECEIVERS' POSSESSION.

A shipper of logs by rail, being unable to pay the freight in advance, agreed with the receivers of the railroad that after transportation each lot of logs should be held in a boom owned by one P., and while so held should be considered as in the possession of the receivers. The receivers thereafter arranged with P. that he should hold the logs as their agent, and should not release any of them except on notice to the receivers, and with their consent. The shipper thereafter induced P. to release one raft without first obtaining the receivers' consent, and the evidence strongly tended to show that he accomplished this by fraud and false statements, but the proof was not sufficient to convince the court beyond a reasonable doubt. *Held*, that in the absence thereof, and of proof that he had knowledge of P.'s instructions from the receivers, the shipper could not be convicted of contempt of court in interfering with property in the possession of its receivers.

This was a proceeding against Thomas Jose for an alleged contempt in interfering with property in the possession of the court's receivers.

Wm. H. Brinker, U. S. Atty.

Greene & Turner, for defendant.

Carr & Preston, for receivers, Seattle, L. S. & E. Ry. Co.

HANFORD, District Judge. At the instance of the receivers of this court, in charge of the business and property of the Seattle, Lake Shore & Eastern Railway Company, the defendant has been arrested and brought before the court to answer a charge of contempt alleged to have been committed by him, in this: That on or about the 14th day of August, last, said defendant unlawfully, willfully, and clandestinely wrested from the possession of said receivers, and removed out of the jurisdiction of this court, a raft of saw logs which were theretofore in the lawful possession of said receivers. The undisputed facts are that the defendant, prior to the date of the alleged offense, was engaged in cutting saw logs at a place near to the line of said railroad, and dependent on said railroad for transportation of his saw logs to salt water. The logs were delivered to the receivers, and carried upon trucks to Salmon bay, where they were unloaded, and placed in a boom owned and controlled by one A. C. Pates. Timber belonging to other loggers, transported by the same railroad, was also received and cared for by said Pates, who, for a consideration paid by the loggers, attended to the unloading of the logs from the trucks, and placed them in a general boom, and afterwards, as required, sorted them, and made up rafts for towing; having pocket booms, rafting gaps, and

other necessary conveniences for the business. The defendant was unable to prepay the railroad charges for transportation, and it was customary for him to make payments on account after making sale of each raft. In April or May preceding the alleged offense, at the request of the receivers, through the auditor and general traffic manager of the railroad, the defendant, by the firm name of Thomas Jose & Son, in which he was then transacting his logging business, signed a written contract, whereby he consented that the receivers might do the work of unloading the logs from their trucks, and that said logs should be deemed to be in the possession of the receivers so long as the same remained in said boom; the expense of unloading and booming to be borne in the first instance by the receivers, and added to their charges for freight; such expense to be not greater than had been previously charged for the same service. That part of the written contract relating to the payment by the receivers of charges for unloading and booming has not been observed, the fact being that said Pates continued after the making of said contract to do the work, and look to the defendant for payment, as he had previously done. After said contract had been signed, and at least two months before the date of the alleged offense, the receivers, through their employés, entered into a verbal agreement with said Pates, whereby he undertook to receive the logs of the defendant in his boom, and hold the same as agent for the receivers, and promised that he would not permit any of said logs to be taken away without giving notice to the receivers, and obtaining their consent previous to the removal; and in fulfillment of his said agreement said Pates did notify the receivers, and obtain instructions from them releasing each raft taken by the defendant, until the taking complained of in this case. On the afternoon of August 14, 1894, the defendant, without the knowledge or consent of the receivers, or of any agent or employé of theirs, except said Pates, took a raft of logs from said boom to British Columbia, and sold the same, and after returning from British Columbia he called at the office of the receivers, and stated that he wished to make full settlement of his account for transportation of logs, but coupled with the condition that he should receive certain credits, but went away without waiting for his account to be made up, and never afterwards returned, or preferred any other request for a settlement; and he has not paid any part of the money received from the sale of said raft to the receivers, on account of his indebtedness for transportation of said logs, and he has not rendered to them any statement of the particulars or amount of his claims against the railroad. The amounts which he has paid from time to time on account of the freight charges on his logs are not more than the amounts of freight charges on the particular logs which had been marketed, according to the mill's scale, and although approximately 1,000,000 feet of logs have been transported by said railroad, on account of which no payments have been made, the defendant now denies that he is indebted in any sum whatever for freight on his logs transported by said railroad.

In addition to these undisputed facts, the evidence convinces me beyond a reasonable doubt, and I find, that the auditor and general traffic manager of the railroad, after engaging said Pates to keep said logs as agent for the receivers, and two or three weeks previous to the 14th day of August, 1894, distinctly and explicitly informed the defendant that all of his logs which had been transported on said railroad, and which had not been sold, were held by the receivers as security for the amount of his indebtedness for freight charges on the same, and that he would not be permitted to remove any of said logs without first discharging said indebtedness, or making a satisfactory arrangement whereby the amount due should be secured; and the defendant did not then dispute the possession of the receivers, or the fact of his being indebted as claimed. I am likewise convinced, and also find, that the purpose of said written contract was to enable the receivers to transport the defendant's logs without prepayment of the freight charges, and to retain custody of the logs in order to preserve their carrier's lien for said charges, and that the defendant understood that such was the purpose of said agreement at the time of signing it. I am likewise convinced, and also find, that the defendant did ask for and obtain the consent of said auditor and traffic manager to the removal of each of the several rafts which were sold after the signing of said contract, and prior to the taking of the raft on the 14th of August.

I make said findings notwithstanding the testimony to the contrary given by the defendant upon this trial. Testimony was introduced upon this trial strongly tending to prove that, at the time of the taking of the raft on the 14th of August, Mr. Pates made objection to the taking of said raft until he should first notify the receivers and receive their consent, and that his objections were overcome by assurances then given by the defendant to the effect that he had just come from the office of the receivers, and that they understood he was to take the logs, and had assented thereto. I am not, however, convinced beyond a reasonable doubt that any such objections or assurances were made or given, and I give the defendant the benefit of the doubt on this point. As a matter of fact, Mr. Pates was the authorized agent of the receivers to hold possession of said logs; but he had no authority to surrender the possession of said logs to the defendant, or to any one else, except as he should be especially instructed by the receivers or the general officers of the railroad acting under them, and no such special instructions were at any time given for the release of the raft taken by the defendant on the 14th of August. I consider his position to have been similar to that of a warehouse keeper having possession of goods received from a carrier, on which charges for carriage are unpaid, and who, in consideration of the delivery of the goods to him for storage, has undertaken to hold the same for the unpaid freight, or until released by the carrier's order. But the evidence fails to show that the defendant knew the extent of Pates' authority as agent, or knew that he was not authorized to release said logs without special instructions. The evidence fails to prove that the defendant would have willfully taken forcible posses-

sion of said logs, or removed the same, if they had not been actually delivered to him by Pates; and, the evidence being insufficient to convince me beyond a reasonable doubt that such delivery by Pates was obtained by actual false statements and representations made by the defendant, the case against the defendant lacks the element of a willful exertion of force and intentional taking of property from the custody of the receivers against their will.

Section 725 of the Revised Statutes of the United States limits the power of this court to punish for contempts. Persons not parties to litigation pending in the court, and not holding official positions requiring them to yield obedience to the court in their official conduct, can be punished in proceedings for contempt only for acts committed in the immediate presence of the court, or so near thereto as to interfere with the administration of justice, or for willfully resisting the execution of the lawful process or commands of the court. The word "resistance," used in the statute, is to be understood as implying a willful purpose to interfere so as to prevent the execution or enforcement of process or the court's orders. Accusations for contempt must be supported by evidence sufficient to convince the mind of the trior, beyond a reasonable doubt, of the actual guilt of the accused, and every element of the offense, including a criminal intent, must be proved by evidence or circumstances warranting an inference of the necessary facts; otherwise, the defendant is entitled to go acquit. In this case, while the proof clearly establishes the fact of an actual interference with the business of the receivers of this court by the taking away of property in their lawful custody, without their consent, and while the prosecution appears to have been founded upon evidence showing just cause for the accusation, I nevertheless am constrained to decide that the accusation has not been proven. Without proof of knowledge on the part of the defendant of the lack of authority in Pates to release the logs, and without convincing evidence that the defendant did fraudulently induce Pates to surrender the logs by falsely representing to him that the receivers had consented thereto, I can find no facts warranting an inference of the criminal intent necessary to justify the infliction of punishment.