## MAYNARD v. UNITED STATES.

Court of Appeals of District of Columbia.
Submitted October 7, 1927. Decided
November 7, 1927.

Petition for Rehearing Denied November 25, 1927.

No. 4539.

1. Jury ⊜13(21)—Defendant in contempt proceedings in court of equity is generally not entitled to trial by jury.

A court of equity has power to punish for contempt of its orders and decrees, and defendant, in such contempt proceedings, is not generally entitled to a trial by jury.

2. Jury ⊜13(21)—Provision of law requiring jury trial for contempt proceedings authorized therein held not applicable to cases for contempt of decree issued in exercise of general equity jurisdiction (Clayton Act, §§ 21, 22 [28 USCA §§ 386, 387]).

Provision of Clayton Act, Oct. 15, 1914, §§ 21, 22 (28 USCA §§ 386, 387 [Comp. St. §§ 1245a, 1245b]), authorizing a jury trial in proceedings for contempt of court, are confined to cases coming within purview of the act, and are not applicable to cases for contempt of a decree of court issued in exercise of its general jurisdiction, since, being a limitation on inher-

ent general power of court, it must be limited strictly to cases arising under the statute.

**3. Contempt ⬯51—Law limiting power to punish for contempt held not to affect summary power of court (Jud. Code, § 268 [28 USCA § 385]).**

Judicial Code, § 268 (28 USCA § 385), limiting power to punish for contempt, *held* not to affect summary power of court to punish therefor.

**4. Constitutional law ⬯273—Refusal to grant jury trial in proceedings for contempt in disobeying liquor injunction held not to deny due process (National Prohibition Act, tit. 2, § 24 [27 USCA § 38]).**

National Prohibition Act, tit. 2, § 24 (27 USCA § 38), not providing for right of trial by jury for contempt, refusal of court to grant motion for jury trial in proceedings for contempt for violating liquor injunction *held* not to amount to deprivation of liberty without due process, within meaning of Constitution.

**5. Jury ⬯13(21)—Defendant in contempt case in equity is not entitled to jury trial, unless right is reserved by statute.**

A defendant in a contempt case is not entitled to trial by jury, except where such right is expressly reserved by statute, and in absence of such statutory restrictions there is no deprivation of any constitutional right in subjecting him to trial by court.

**6. Intoxicating liquors ⬯249—Search warrant on which contempt proceedings for violating liquor injunction was based held not invalid, because authorizing search either by day or night (Espionage Act, tit. 11, § 10 [18 USCA § 620]; National Prohibition Act, tit. 2, § 25 [27 USCA § 39]).**

Search warrant, on which contempt proceedings for violating liquor injunction was based, *held* not invalid under Espionage Act, June 15, 1917, tit. 11, § 10 (18 USCA § 620), carried into National Prohibition Act, tit. 2, § 25 (27 USCA § 39), because of authorizing search either by day or night, in view of positive evidence of existence and sale of liquor on premises.

**7. Intoxicating liquors ⬯279—Liquor found on premises and marked money taken from defendant when arrested held admissible in contempt proceedings for violating liquor injunction.**

In proceedings for contempt for violation of liquor injunction, liquor found in a blind table on premises and marked money paid to defendant by officer for liquor purchased from him, and taken from him at time of arrest, *held* admissible.

**8. Arrest ⬯71—Arresting officer, having knowledge of offense, may search defendant's person and property for evidences.**

Where officer making arrest had knowledge that offense was committed, he is justified in searching defendant's person and property for evidences of crime.

Appeal from the Supreme Court of the District of Columbia.

Information in equity for contempt by the United States against Harry Maynard. Judgment of contempt, and defendant appeals. Affirmed.

T. M. Wampler, of Washington, D. C., for appellant.

Peyton Gordon, H. W. Orcutt, and D. A. Hart, all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. On February 25, 1925, the United States filed in the court below a bill for injunction against the appellant and one Terry A. Rodden, under section 22 of title 2 of the National Prohibition Act (41 Stat. 305 [27 USCA § 34]), for the abatement of a nuisance, on the alleged ground that the premises were being operated and maintained as a place where intoxicating liquor was sold, kept, and bartered. Sufficient facts were averred in the bill to justify the court in issuing an order pendente lite, restraining the defendants from conducting, carrying on, maintaining, or permitting to be conducted, carried on, or maintained, the nuisance complained of in the bill.

It appears that the place in question, No. 1416 K street in the city of Washington, was conducted and known as the Maple Inn Cafeteria, and on March 16, 1926, an information in equity for contempt was filed, alleging, among other things, that on February 5, 1926, appellant sold one pint of gin to one Daniel P. Lyon, and on February 6, 1926, he sold two pints of gin to one George F. Breen, and that thereafter the appellant kept for sale upon said premises certain quantities of intoxicating liquor. A bench warrant against the appellant Maynard was issued and duly served. On hearing the defendant was adjudged guilty of contempt of court in disobeying the order of injunction, and sentenced to pay a fine in the sum of $1,000 and to undergo imprisonment in the Washington asylum and jail for a period of one year. From the judgment this appeal was prosecuted.

[1] The denial of defendant's motion for a jury trial is assigned as error. A court of equity has power to punish for contempt of its orders and decrees, and the defendant, in such contempt proceedings, is not generally entitled to a trial by jury. Counsel for defendant, however, attempts to sustain his contention under the terms of the Clayton Act of October 15, 1914 (38 Stat. 738), sec-

tion 21 (28 USCA § 386 [Comp. St. § 1245-a]) of which provides that any person willfully disobeying any order of a court of the United States, or of the District of Columbia, shall be proceeded against for contempt of court. Section 22 (28 USCA § 387 [Comp. St. § 1245b]) provides: "In all cases within the purview of this act such trial may be by the court, or, upon demand of the accused, by a jury; in which latter event the court may impanel a jury," as in the trial of a misdemeanor, and the case shall be tried according to the practice in criminal cases.

[2] These provisions, however, are confined to cases coming within the purview of the Clayton Act, and are not applicable to cases for contempt of a decree of court issued in the exercise of its general jurisdiction. McGibbony v. Lancaster, et al. (C. C. A.) 286 F. 129. The Clayton Act is in the nature of a special statute, and the provision for the trial of contempt by a jury, being a limitation upon the inherent general power of the court to punish for contempt, must be limited strictly to cases arising under the statute, and should not be extended to the matter of the punishment of contempt generally. In Eilenbecker v. Plymouth County, 134 U. S. 31, 10 S. Ct. 424, 33 L. Ed. 801, the court said: "If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it. It has always been one of the attributes—one of the powers necessarily incident to a court of justice—that it should have this power of vindicating its dignity, of enforcing its orders, of protecting itself from insult, without the necessity of calling upon a jury to assist it in the exercise of this power."

[3] This construction of the Clayton Act in no way affects either the general power of the courts to punish for contempt or the limitation placed upon the federal courts by section 725 of the Revised Statutes, as now embodied in section 268 of the Judicial Code (36 Stat. 1087 [28 USCA § 385; Comp. St. § 1245]), as follows: "Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

This, however, in no way affects the summary power of the court to punish for contempt. The court, interpreting this statute in the Eilenbecker Case, said: "It will thus be seen that even in the act of Congress, intended to limit the power of the courts to punish for contempts of its authority by summary proceedings, there is expressly left the power to punish in this summary manner the disobedience of any party, to any lawful writ, process, order, rule, decree, or command of said court. This statute was only designed for the government of the courts of the United States, and the opinions of this court in the cases we have already referred to show conclusively what was the nature and extent of the power inherent in the courts of the states by virtue of their organization, and that the punishments which they were authorized to inflict for a disobedience to their writs and orders were ample and summary, and did not require the interposition of a jury to find the facts or assess the punishment. This, then, is due process of law in regard to contempts of courts, was due process of law at the time the Fourteenth Amendment of the federal Constitution was adopted, and nothing has ever changed it, except such statutes as Congress may have enacted for the courts of the United States, and as each state may have enacted for the government of its own courts."

[4,5] The power of the court to punish summarily for disobedience of its injunctive orders, issued under the provisions of section 24 of title 2 of the National Prohibition Act (27 USCA § 38), is not limited by or dependent upon the limitations found in the Clayton Act. Authority is derived from the foregoing general statute relating to contempt proceedings in the federal courts. There being no provision for the right of trial by jury, in proceedings arising under the National Prohibition Act or the general act, the refusal of the court to grant the motion in this case does not amount to a deprivation of defendant's liberty without due process of law within the meaning of the Constitution of the United States. In other words, the power of the court to punish for contempt by summary proceedings is not limited because of the criminal nature of the offense. A defendant in a contempt case is not entitled to trial by jury, except where such a right is expressly reserved by statute. In the absence of such a statutory restriction there is no deprivation of any constitutional right in subjecting him to trial by the court. In re Debs, 158 U. S. 564, 594, 15 S. Ct. 900, 39 L. Ed. 1092; Hunter v. United States, 48 App. D. C. 19.

[6] Defendant's second assignment of error is based upon the court's denial of his motion to quash the search warrant. The principal objection interposed is that the search warrant authorized the search of the premises either by day or night, and in support of defendant's contention section 10 of title 11 of the Espionage Act of June 15, 1917 (18 USCA § 620), is relied upon, which provides that "the judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night." This was a war measure, and has been carried into section 25 of title 2 of the National Prohibition Act (27 USCA § 39). It is difficult to find a case where the evidence of the existence and the sale of liquor on the premises is more positive, than in the instant case. It had been bought on the premises the day the search warrant was issued, and the day the search was made. The affidavit of the officer, George F. Breen, in support of the search warrant, is positive, and not on information and belief, and the affidavits in support of the information are positive as to the facts upon which the information is based. We find no difficulty in upholding the validity of the search warrant. Indeed, the search, without warrant, could be upheld, in this instance, as an incident of the arrest.

[7] The third assignment of error relates to the admission of certain evidence, namely, the liquor found in a blind table in the kitchen of defendant's restaurant, and also certain money that was taken from the defendant at the time of his arrest. When the officers went to the premises to execute the warrant, two of the officers stood at a point some distance away, but in full view of the entrance to defendant's place of business. The officer Breen, who had purchased a pint bottle of gin from defendant earlier in the day, accompanied by one Livingston, an officer, went to the entrance of defendant's place, and Breen went in and purchased a pint of gin from defendant, paying for it with two marked $1 bills. Breen then came out and gave the officers a signal, exhibited to them the bottle of gin, which he told them had been purchased from defendant and paid for with the marked bills, which defendant had put in his trousers pocket. When the officers entered the premises, they searched the place, found liquor in the blind table, and arrested the defendant. They searched him, and found in his trousers pocket the marked bills which had been given the purchaser by the officers before he entered the place.

[8] It is simply the usual ordinary case of being caught with the goods on. It was not necessary for the officers to see the transaction in order to justify an arrest. It was sufficient that the offense was committed within the immediate knowledge of the officers, and under circumstances coming within their observation, to make the arrest lawful. In such circumstances the officer making the arrest is justified in searching the defendant's person and property for evidences of crime. "When there has been a lawful arrest without a warrant, the officer making the arrest has certain well-recognized rights and duties respecting a search of defendant's person and property, and a seizure of property in his possession. He may search for the 'instruments, fruits, and evidences of the crime' (Sayers v. U. S. [C. C. A.] 2 F.[2d] 146; U. S. v. Welsh [D. C.] 247 F. 239), even to the extent of searching the building in which the crime was committed so far as controlled by the offender" (United States v. Seltzer [D. C.] 5 F.[2d] 364).

We find no error; the evidence of the guilt of defendant is conclusive.

The judgment is affirmed.