## RUSSELL v. UNITED STATES.
### No. 10593.

Circuit Court of Appeals, Eighth Circuit.
Nov. 19, 1936.

Francis Heisler, of Chicago, Ill.; and Gilbert E. Carlson, of St. Paul, Minn., for appellant.

George A. Heisey, Asst. U. S. Atty., of St. Paul, Minn. (George F. Sullivan, U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant convicted of a criminal contempt of court, and sentenced to imprisonment for a term of four months, sued out this appeal in due form. Shortly stated, the contempt charged consisted in appellant's "having knowingly, willfully and unlawfully resisted the execution by the United States Marshal for the District of Minnesota of a certain writ of replevin duly issued by this court (the United States District Court, for the District of Minnesota) in a certain action pending in this court, entitled 'Peacock Knitting

Company, a corporation, plaintiff v. Strut-wear Knitting Company, a corporation, defendant.'"

The antecedent facts necessary to make clear the acts of the appellant and the legal contentions now urged by him, run thus: For some time prior to November 27, 1935, a dispute had been pending between the Strutwear Knitting Company and its employees, and the place of business of said company had been picketed day and night by such employees, who were on a strike. Theretofore, and on November 21, 1935, the Peacock Knitting Company, a corporation, organized and existing under the laws of the state of Missouri, with its principal place of business in the city of St. Joseph, Mo., filed an action in replevin, in the United States District Court for the District of Minnesota, against the Strutwear Knitting Company, a corporation, organized and existing under the laws of the state of Minnesota, and having its principal place of business in the city of Minneapolis, Minn.

In and by this action in replevin, plaintiff therein sought to recover from defendant therein, the possession of certain personal property, namely, goods, wares, merchandise, furniture, machines, and appliances, which plaintiff therein alleged were being unlawfully detained by said defendant, the value of which plaintiff alleged to be in excess of $4,000. The petition, or complaint, from which we take the above facts as to corporate organization, places of business of the parties and the value of the property in dispute was duly verified, as was also the affidavit in replevin filed with the complaint. Thereafter, and on the same day, a writ of replevin was issued by the federal District Court to the United States Marshal for the District of Minnesota, commanding such Marshal to take the property from the defendant in the replevin action, and unless a forthcoming bond should be made by such defendant within three days, to deliver it to the plaintiff in said action.

On the 27th day of November, 1935, the United States Marshal, through his deputies undertook to execute the writ of replevin. To this end a number of Deputy United States Marshals with trucks, convoyed by the local police, proceeded to the place of business of the Strutwear Knitting Company in Minneapolis; but upon reaching this place of business they were met by a mob of rioters, some 50 or 75 in number, who assaulted the Deputies, by hurling rocks toward and at them and at the trucks, striking the trucks and breaking the windshields and windows thereof. So vigorous was this assault, that the Deputy Marshals left the plant, without executing the writ.

It is not shown by the record, that appellant was present on the 27th when the rock-throwing assault occurred, but it fairly appears that one Swanson and one Ellis, who were jointly tried with him were present. On November 29, 1935, the United States Marshal got other trucks, and again proceeded to execute the writ of replevin. These trucks were also in charge of Deputy Marshals wearing badges of office as such, and the trucks bore signs to the effect, that they and their contents were in the custody of the United States Marshal acting under the order of the United States District Court. When these trucks turned in from the street in order to get on a private concrete driveway, leading to the rear of the plant where they were to be loaded with the replevined goods, they were met by a large crowd of persons, in two groups, rocks were again thrown, but the crowd was dispersed and the trucks went to the rear of the plant and loading proceeded. Neither appellant nor his particular group threw any rocks, but he was among them taking kodak pictures, with what object does not appear. For he was not, nor had he ever been an employee of the Strutwear Knitting Company, and if he was, or had ever been a member of any Union Labor unit, the record does not disclose the fact. He was a stranger to the pending dispute between the Strutwear Knitting Company and its striking employees, "until," as his counsel ingenuously said in answer to a question, "he threw the milk bottles."

While the trucks were loading, appellant and another, whose identity is dark on the record, intentionally dropped and broke two quart-size milk bottles on the concrete roadway over which the pneumatic-tired trucks must pass in going from the plant to the street. Appellant is clearly shown to have broken one of these bottles, and after doing so to have kicked the shards around with his foot to secure better distribution. He was ordered by a police officer to pick up the glass débris; he refused, and was arrested by the police, and later an information against him was filed in the United States District

Court for contempt, and his trial and conviction followed.

For reversal appellant assigns as errors, that (a) the court erred in denying the motion of appellant to quash the writ of attachment and to strike out the information, because the court was without jurisdiction in the replevin action, for that, said action was a fraud upon the court and collusive between the parties thereto; (b) the court erred in denying appellant's application for the issuance of a subpœna duces tecum to the plaintiff and defendant in the replevin action, commanding them to bring into court all documents, papers, and records pertaining to the incorporation of the Peacock Knitting Company and to all financial transactions between said plaintiff and defendant; (c) the court erred in denying appellant's request for a trial by a jury; (d) the court erred in consolidating for trial, the case of appellant with those of Swanson and Ellis; and (e) that the evidence of appellant's guilt was not sufficient to warrant his conviction, in the light of the rule which gives him the benefit of a reasonable doubt.

The motion of appellant to quash the attachment and strike out the information for contempt for alleged lack of jurisdiction was bottomed on the theory that the replevin action had no basis in good faith, but was the result of collusion between the plaintiff therein and the defendant therein, whereby defendant therein should be enabled to procure the protection of orders of a federal court, while it moved its picketed property and business from Minnesota to Missouri, and from its own possession to the possession of its alleged creature and alter ego, the plaintiff. This theory obviously involves sinister inferences of the invasion of personal and property rights, touching freedom of action, in the transfer of property and the place of carrying on business and manufacture. But with these latter things we have presently no concern.

It is, as appellant urges, settled and well-nigh fundamental, that no one may be adjudged guilty of a criminal contempt, as here charged for interfering with the carrying out of an order, or a decree of court, which the court had no jurisdiction to enter. Beauchamp v. United States (C.C.A.) 76 F.(2d) 663; In re Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216. But, since a prosecution for a criminal contempt is between the public and the defendant therein, such prosecution is not a part of the cause out of which the contempt arose (O'Hearne v. United States, 62 App.D.C. 285, 66 F.(2d) 933, loc.cit. 935; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.(N.S.) 874); it is equally as well-settled, that the jurisdiction cannot be the subject of a collateral attack. Here, there can be no doubt, that the federal court had jurisdiction to issue a writ of replevin and cause it to be executed present the requisite diversity of citizenship as here, and when more than the value of $3,000 was involved. The complaint on its face was regular, and it showed that the sum or amount in dispute was $4,000 and that plaintiff therein is a Missouri corporation and defendant therein a Minnesota corporation. So, since the alleged lack of jurisdiction could only arise extrinsically, and depended on evidence for its solution, such evidence and solution could be offered and had, only in the court in which the replevin action was pending and only in the replevin action itself.

The whole paper record in the replevin action, we repeat, showed that the federal court had jurisdiction of both the parties therein and the subject-matter of the action. Assuming, arguendo, that the appellant's contentions of fact, as to the relations of the plaintiff and the defendant in the replevin action, and their alleged collusion, were well taken, and that when disclosed by evidence in the replevin action, would have sufficed to oust jurisdiction, this does not help appellant. Having got jurisdiction, the federal court had the right to retain it, till it decided in that case, and not in this, that its apparent jurisdiction had been lost. United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L. Ed. 319, 8 Ann.Cas. 265; Brougham v. Oceanic, etc., Co. (C.C.A.) 205 F. 857. The manifold evils and the unending litigation and complications which would ensue if jurisdiction could thus be attacked collaterally are obvious.

We are of opinion, therefore, that so far as the record before us discloses the trial court had jurisdiction of the replevin suit. This view, it is plain, disposes of the alleged error, bottomed upon

the court's refusal to issue the subpœna duces tecum. We pretermit discussion of other reasons, which may or may not have warranted the court in refusing issuance of it, such as the indefiniteness of the application, and its demand on the parties to the replevin action to furnish appellant with public records, which were as open to him as they were to such parties and which he himself could have obtained. It is obvious, that upon the view taken as to jurisdiction, the documents, papers, and records asked for in the subpœna, were not relevant to any issue in this case, and so for this reason the trial court was not bound to order its issuance.

As forecast in the statement of the case, a labor dispute had for some time been pending between the Strutwear Knitting Company and its employees, and as the information against appellant sets forth, the plant of the above company "had been the site of considerable civil strife and disturbance due to labor difficulties." In short, the company's employees were on a strike, and the plant was being actively, vigorously, and continuously picketed, when the United States Marshal undertook to execute the writ of replevin, and when appellant committed the alleged contempt.

Upon this situation, and upon section 111, title 29 U.S.C. (29 U.S.C.A. § 111), the appellant bottoms his contention that the trial court erred in denying his request for a trial by a jury. The above section, thus relied on, reads as follows: "In all cases arising under this chapter in which a person shall be charged with contempt in a court of the United States (as herein defined), the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed; Provided, That this right shall not apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court." (Act of Mar. 23, 1932, c. 90, § 11, 47 Stat. 72.)

It is not necessary to use time or space in discussing whether the condition and situation present, or the acts of appellant, cause this case to be allocated to one of the categories specially excepted by the proviso of the quoted statute. So we pretermit considering whether what appellant did (as the evidence discloses it) was done "in the presence of the court, or so near thereto as to interfere with the administration of justice." For there is another and well-settled reason why there was no error in refusing appellant's request to be tried by a jury, and that is that section 111, supra, has no application to a case wherein the accused is charged with a contempt, for that he resisted the execution by an officer of the court of a writ, which such officer was required by law and the order of the court to execute. Conley v. United States (C.C.A.) 59 F.(2d) 929; Maynard v. United States, 57 App. D.C. 314, 23 F.(2d) 141; McGibbony v. Lancaster (C.C.A.) 286 F. 129; Donato v. United States (C.C.A.) 48 F.(2d) 142. The above cases and many others hold that section 111, supra, quoted above, and relied on by appellant, has no application whatever to a situation like that in the instant case. The Marshal had nothing to do with the labor dispute; neither had the action in replevin; it was merely a coincidence that the Marshal was required to perform a duty while the labor dispute was pending. The power to punish for a contempt, either civil or criminal, without a trial to a jury, is inherent in a court (6 R.C.L. 515), and it has been so from time immemorial. Section 385, title 28, U.S.C. (28 U.S.C.A. § 385) is merely declaratory of, and a limitation on the exercise of, this inherent power. See, note 21, to section 385, title 28, U.S.C.A. This power may be modified, or even abrogated, it may be, by a constitutional statute, but since the power so to try is inherent, such a statute is not by construction to be extended beyond its clear terms. Maynard v. United States, supra; In re Debs, 158 U.S. 564, 594, 15 S.Ct. 900, 39 L.Ed. 1092; Donato v. United States, supra. Neither section 111, supra, nor section 22 of the Clayton Act (section 387, title 28, U.S.C. [28 U.S.C.A. § 387]) has any application to the facts in the case at bar, and so it was not error to deny appellant a trial by a jury.

The trial court heard the evidence against Swanson and Ellis, and the appellant at one and the same hearing. Appellant, as observed above, urges this as error. The acts of alleged contempt on the part of both Swanson and Ellis occurred on November 27, while the acts of appellant took place two days later, on

November 29, 1935. All three occurred in the same case and identical situation. So, except for the particular act or acts done by each of the three, which fell into a small compass, the evidence as to the place, the replevin action, the situation and background was necessarily identical. The trial was to the court, and was in its nature summary. It was a matter of conservation of time and of the convenience of the court to hear the evidence at the same time. The trial developed no conflict of interest, or of evidence as between Swanson and Ellis on the one hand and appellant on the other. The appellant was in no conceivable way hurt or compromised by this manner of trial. The trial court, in fair effect, stated that he would consider no evidence against appellant which did not directly apply to him; nor is there a hint in the record that he did so. Even in a strictly criminal case, the granting or refusal of a separate trial rests in the sound judicial discretion of the trial court, and the refusal to grant a separate trial will not be error, absent a clear abuse of such discretion. Brady v. United States (C.C.A.) 39 F.(2d) 312; Cochran v. United States (C.C.A.) 41 F. (2d) 193. What we have said already upon the point discloses that no hurt or prejudice accrued to appellant on account of his trial with Swanson and Ellis. For, save the facts that Swanson and Ellis threw rocks at the trucks and appellant broke milk bottles, or a bottle in the trucks' path, the evidence is identical. Surely, the trial judge had no difficulty in separating in his mind and memory the above simple acts. It follows, we think, that this contention should be disallowed.

While appellant urges as error the refusal of the court to direct a verdict, because of the alleged insufficiency of the evidence, he presents no argument suggesting reasons for the faith he evinces in making the contention. He merely cites to us cases, which adhere to what we deem the settled rule, namely, that in a prosecution for criminal contempt the evidence must show the guilt of the accused beyond a reasonable doubt. Here, three witnesses testified positively that appellant was present with the mob which was resisting the entry of the trucks to the loading place, and that appellant broke at least one milk bottle on the road which these pneumatic-tired trucks had to use in going from the plant to the warehouse, and that he scattered this broken and splintered glass over this road by kicking it about. There was thus substantial evidence of the overt act charged against him, the weight of which was for the trial court as the trier of facts. For we are of course permitted to take judicial notice of the effect of broken glass on a roadway used by pneumatic-tired vehicles.

We are of the opinion that what the appellant did constituted resistance to the execution of the writ of replevin under the clearly proven situation present at the time; since resistance, as used in the statute (section 385, title 28 U.S.C. [28 U.S.C.A. § 385]), is to be understood as meaning inter alia, a willful purpose and intent to prevent the execution of the process of the court. United States v. Jose (C.C.) 63 F. 951.

Having found no error meet for reversal, we are of opinion that the case should be affirmed, which accordingly we order.