## BUCK et al. v. RAYMOR BALLROOM CO. et al.

### No. 4600.

District Court, D. Massachusetts.

June 23, 1939.

Guterman & Guterman and Samuel Berkett, all of Boston, Mass., and Schwartz & Frohlich, of New York City, for plaintiffs.

J. C. Johnston, of Boston, Mass., for defendants.

McLELLAN, District Judge.

All the parties in interest agree that this is not a petition for criminal contempt, but for civil contempt, and it is unnecessary to call attention to the facts which make this clear. See Gompers v. Buck's Stove & Range Company, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874.

The question here presented by the petition for contempt and the defendants' motion to dismiss it is not whether the defendants are punishable for criminal contempt. It is not whether under certain circumstances the facts presented might be both criminal and civil contempt. The question here is whether the plaintiffs make out a case of civil contempt entitling them to the relief sought.

On February 14, 1938, the plaintiffs in this petition for contempt commenced a suit in equity against the defendants Raymor Ballroom Company and Raymond J. Galvin

for copyright infringement by the public performance for profit of certain musical compositions. Thereafter, on March 16, 1938, the bill of complaint was taken pro confesso as against the defendants named therein, and later a final decree was entered, providing in part:

"1. Ordered, Adjudged and Decreed that the defendants, their agents, servants and all other persons acting under the direction, control, permission or license of the defendants, be and they hereby are perpetually enjoined and restrained from publicly performing said musical compositions, entitled "How Could You" and "Where or When", and from causing or permitting said compositions to be publicly performed in said establishment or any other place owned, controlled or conducted by the defendants or from aiding or abetting the public performance of the said compositions in any such place or otherwise; and it is further

"2. Ordered, Adjudged and Decreed that the plaintiffs recover of the defendants the sum of $500.00 as damages and the further sum of $100.00, as attorneys' fees, and the sum of $——— costs as taxed, making in all the total sum of $———."

No question as to the violation of the injunction is here involved. Execution in the sum of approximately $600 issued to the plaintiffs against the defendants Raymor Ballroom Company and Raymond J. Galvin on May 26, 1938. The amount of the execution was not paid and it was placed in the hands of the Marshal in order that the amount thereof might be levied. On September 17, 1938 and October 11, 1938, Deputy Marshals went to the corporate defendant's ballroom seeking to levy the amount of the execution and did not succeed in so doing for reasons hereafter stated.

The Raymor Ballroom is a large public ballroom located on Huntington Avenue near its intersection with Massachusetts Avenue in the City of Boston. Its capacity is between one thousand and eleven hundred persons. On both of the occasions when the alleged contempts occurred it was being operated by the defendant Raymor Ballroom Company. The defendant Raymond J. Galvin was the treasurer of this corporation. The other defendants were employees thereof. They are Ave Galvin Demers, a sister of the defendant Galvin, MacLean and Gannett (the true name of the latter being Garnett), who were special policemen, and one Leonard, who was employed at odd jobs.

On the evening of September 17, 1938, arrangements were made for Deputy Marshal Daniel J. Chapman to go to the ballroom and attempt to satisfy the execution. He, accompanied by Mr. Donald Skuse and Mr. Paul Skuse, who were brought along in case it should prove necessary to employ a keeper, met Mr. Berkett, attorney for the plaintiffs; and Mr. Russell W. Rome, their local representative, at a point near the ballroom at about 9:20 P. M. Deputy Marshal Chapman, accompanied by Donald and Paul Skuse, then went to the Raymor Ballroom and asked for Mr. Galvin. When Galvin appeared, Deputy Marshal Chapman stated his mission and demanded payment of the execution. The defendant Galvin then invited Chapman to step into his private office, which he did, leaving both Donald and Paul Skuse to watch the ticket window. At that time about two hundred dollars in small bills were visible through the window. After entering the private office, Galvin stated that the dance hall was no longer operated by the defendants but was operated by "The Boston Amusement Company", a Massachusetts corporation. In fact, this was untrue. The dance hall was being operated by the defendants and there was no such corporation as The Boston Amusement Company. While Chapman was in the office, a boy dressed in a clerk's coat walked up to the box office door and the cashier passed him a bag of money. When asked his business, he replied "The boss sent me out for the receipts". Paul Skuse accompanied the boy into the ballroom, and there instructed him to place the money on a counter until the Deputy Marshal had finished his business in the office. When Galvin and Chapman came out of the office, Skuse called out to Chapman, telling him that the box office receipts were on the counter. Galvin was nearer to the bag, however, and making a lunge for it, seized it and carried it off, despite protests from the Deputy. About five hundred persons were present in the ballroom at the time. Somewhat later the Deputy Marshal left the premises without accomplishing his purpose.

On the evening of October 11, 1938, another attempt was made to satisfy the execution. On this occasion, Deputy Marshal James F. Byrne, together with his brother Edward T. Byrne, and Berkett

and Rome, visited the Raymor Ballroom at about 10 P. M. Edward Byrne was first sent to buy a ticket, which was found to bear the words "Raymor-Raymor Ballroom Co." When Deputy Marshal Byrne approached the entrance of the hall, he saw Galvin stationed outside. Instructing his brother to remain a short way behind, until called, he walked up to Galvin, made known the purpose of his visit and demanded payment of the execution. Galvin suggested. that they step inside his private office, but this invitation was refused. The Deputy Marshal then stepped towards the box office and knocked on the door. When he did this, he was seized by the two special policemen referred to above, the defendants MacLean and Garnett, and held by them. The Deputy then sent his brother for the regular policeman on the corner of Massachusetts Avenue and Huntington Avenue, at the same time explaining his identity to the special officers. They refused to let him go.

While the Deputy was still held in this manner, Galvin went to the front of the ticket window and was handed a bag of money comprising ticket office receipts, which he grabbed, and despite warnings from the Deputy, carried off at a run up Huntington Avenue. This money was not seen again. The Deputy attempted to catch Galvin as he ran off, but was prevented from doing so by the two special officers. When Edward Byrne returned with the regular officer, the Deputy was released. He then tried again to obtain admittance to the ticket booth, advising the ticket seller, Ave Galvin Demers, of his identity. She refused to admit him, informing him that she knew all the answers and that he was wasting his time. Mrs. Demers then continued to sell tickets, depositing the proceeds upon her person, until about 11:55 P. M., when she was escorted home by the defendant Leonard with the money still on her person. She gave no credible explanation for this extraordinary procedure. At various times during the evening she also sent out large bills in the custody of the employees with the request that they be changed, but no change was forthcoming on these occasions. About 12:45 A. M., the Deputy left the premises without having accomplished his errand. On that evening there were at one time about eight hundred people in the ballroom and tickets were sold for sixty-five cents apiece. Accordingly, because of the defendants' conduct, the Deputy Marshal was prevented on this occasion from reaching box office receipts of at least five hundred and twenty dollars.

I find that altogether, on both occasions, the amount upon which the officers would have levied exceeded the amount of the execution.

1. The plaintiffs urge that the failure of the defendants Raymor Ballroom Company and Raymond J. Galvin to pay the amount of the decree constitutes a contempt. But the decree went no farther than to adjudge the debt. It contained no mandatory order for the payment of the money and for present purposes is to be regarded as the equivalent of a judgment at law. Distinguishable from this situation is Freedman v. Sanderson, D.C., 32 F.2d 275, 276, on which the plaintiffs rely, which was based upon alleged voidable preferences and where, according to Judge Brewster's opinion, "decrees were entered * * * adjudging the payments to be unlawful preferences, and *ordering that the amount, with interest thereon, be* paid to the plaintiff, * * *." (Italics supplied.) The original defendants' failure to pay the amount of the decree constituted no contempt, civil or criminal.

2. In the absence of any mandatory order, are the plaintiffs entitled to maintain their petition, which was instituted as a part of the original suit and must be regarded as for civil as opposed to criminal contempt?

The courts' power to punish contempts of their authority is based in part on United States Code, Title 28, Section 385, 28 U.S.C.A. § 385, providing: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

The conduct of the corporate defendant, its agents and servants, and of Galvin, constituted resistance to the court's process mentioned in the statute. See

Russell v. United States, 8 Cir., 86 F.2d 389. Upon the facts heretofore found, contempt there was, but whether it was a civil contempt entitling the petitioners to a remedy presents some difficulty.

That the same acts may sometimes constitute both a civil and a criminal contempt requires no extended citation of authorities. See Gompers v. Buck's Stove & Range Company, 221 U.S. 418, 31 S.Ct. 492, 499, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. Here, as the result of misconduct for which the corporate defendant and Galvin are responsible the plaintiffs suffered special and peculiar damage not common to others or the public. The only remedy suggested by such authorities as have been called to my attention or I have seen is a fine to be paid by the defendants to the plaintiff. The Gompers case, supra, suggests the propriety of such a course. There it is said: "In this case the alleged contempt did not consist in the defendants' refusing to do any affirmative act required, but rather in doing that which had been prohibited. The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the pecuniary injury caused by the act of disobedience."

While Leman v. Krentler-Arnold Company, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389; Aerovox Corporation v. Concourse Electric Company, 2 Cir., 90 F.2d 615, and Coca-Cola Company v. Feulner, D.C., 7 F.Supp. 364, illustrate the imposition of a fine for a civil contempt, apparently they are not cases where the defendant was ordered committed until the fine was paid. But in Norstrom v. Wahl, 7 Cir., 41 F.2d 910, 914, the court below imposed a fine of $1,000 for violation of an injunction in a patent case, to be paid one-half to the United States and one-half to the plaintiff. Holding the case one of civil contempt, the Court of Appeals (7th Cir.) reversed the punitive fine payable to the United States, saying: "The order of the District Court appealed from is reversed, and the cause is remanded to the District Court, with direction to enter there an order finding appellant guilty of civil contempt, and imposing on him a fine of $250, to be paid to appellee, appellant to stand committed until the fine is paid, or he is otherwise discharged."

See also Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; Fox v. Capital Company, 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67; Kreplik v. Couch Patents Company, 1 Cir., 190 F. 565.

The appropriate relief in the case at bar seems to me to be that the defendants Raymor Ballroom Company and Raymond J. Galvin should pay to the Clerk of this court a fine of six hundred dollars ($600) in or within ten (10) days, for the payment of which six hundred dollars ($600) they are to be jointly and severally responsible; that unless such fine is then paid, the defendant Galvin be committed to jail until it is paid or until further order of this court; that the Clerk pay the net amount of such fine to the plaintiffs when received by him; and that the amount so received by the plaintiffs go to the reduction of the amount of the execution. It is so ordered.

In view of the terms of this order and for reasons not necessary here to discuss, the petition is to be dismissed as to the other defendants, but entirely without prejudice to a prosecution for criminal contempt against the defendants Raymor Ballroom Company, Raymond J. Galvin, Ave Galvin Demers, Jack Leonard, David Garnett, Noah MacLean, or any of them. In view of all the foregoing circumstances, no costs against or in favor of any of the parties are to be taxed in connection with the contempt petition or arising out of it.