DIVISION 700, BROTHERHOOD OF LO-
COMOTIVE ENGINEERS, et al.,
Plaintiffs,

v.

NATIONAL RAILWAY LABOR ARBI-
TRATION BOARD NO. 282, et al.,
Defendants.

Civ. A. No. 2786-63.

United States District Court
District of Columbia.

Dec. 11, 1963.

See also 223 F.Supp. 377.

———◆———

Charles S. Rhyne and Max Malin, Washington, D. C., for plaintiffs.

Harland F. Leathers, Department of Justice, Washington, D. C., for defendant Arbitration Board and its members.

Richard J. Flynn, Washington, D. C., for defendant Union R. Co.

HOLTZOFF, District Judge.

This action is brought by a local division of the Brotherhood of Locomotive Engineers, which comprises as its members a group of employees of the Union Railroad Company. The defendants are the National Railway Arbitration Board No. 282, established by an Act of Congress approved on August 28, 1963, Public Law 88–108, as well as the individual members of the Board and the Union Railroad Company. The purpose of the

action is to secure a declaratory judgment that an award recently rendered by the defendant Board, as a result of an arbitration of a nation-wide dispute between certain railroads and certain organizations of railroad employees, does not apply to the Union Railroad Company or to its employees and specifically to the members of the plaintiff organization.

The Union Railroad Company is unlike most railroads. It is a unique railway. It is located and operates solely in the City of Pittsburgh. It carries only freight and is a subsidiary of the United States Steel Corporation.

In order to reach a decision on the question presented it would be helpful to review very briefly in a skeletonized fashion, the events leading up to the enactment of the statute creating the Board. This perhaps would not be necessary because counsel for the Board, with commendable candor, concedes that in his opinion the Board had no jurisdiction of the parties to whom reference has been made. The Union Railroad Company, however, emphatically contends that jurisdiction existed and that the award is binding upon it and upon the plaintiffs, and therefore the Court is reviewing the matter with some degree of particularity.

The undisputed salient facts are that on November 2, 1959, about two hundred Class I railroads served notices, under Section 6 of the Railway Labor Act, 45 United States Code, § 156, proposing a revision in work rules, relating specifically to discontinuance of the use of firemen on other than steam power engines, the composition of train crews, and the like. The Union Railroad was one of the two hundred railroads that served these notices. However, on April 28, 1960 the Union Railroad withdrew the notice that it had served, and the result is that it was no longer effective. On September 7, 1960 five national railroad brotherhoods, representing the operating employees of the two hundred railroads that had served the November 2, 1959 notices, also served notices under the same statute concerning the same issues, as well as proposed changes in wage structure and the like.

No such notice, however, was served on the Union Railroad.

The impasse created by the two groups of notices created a possibility of a nation-wide strike. Mediation and other efforts prescribed by the Railway Labor Act were undertaken in order to stave off such a catastrophe. It is not necessary for the purposes of the question to be determined by the Court to summarize all these efforts, except to say that they ended unsuccessfuly and a strike was imminent. These endeavors did not involve the Union Railroad because it had withdrawn its notice of November 2, 1959. On June 13, 1963 the Union Railroad Company re-served its notices, but proceedings under these new notices pursuant to the Railway Labor Act have not as yet been exhausted.

In view of the imminence of the strike of a nation-wide nature, Congress passed a statute creating an Emergency Arbitration Board and providing for compulsory arbitration of the crucial issues before that Board. This is the Act to which reference has already been made. The Act was in the form of a Joint Resolution of both Houses of Congress and is preceded by a number of recitals. The third recital is significant. It provides that:

> "Whereas, all the procedures for resolving such dispute provided for in the Railway Labor Act have been exhausted and have not resulted in settlement of the dispute."

This recital obviously comprehends only those parties and those matters that are covered by the notices of November 2, 1959, and the corresponding notices served by the Brotherhoods on September 7, 1960. It is the topics comprised in the two sets of notices that were the subject matter of the mediation efforts to which the recital refers. During this entire period, however, the notice served by the Union Railroad Company had been withdrawn and was not effective, and, therefore, the Union Railroad Company was not included within the mediation efforts.

The Act in question creates an Arbitration Board to consist of seven mem

bers. In Section 3 it defines the function of this Board. Its function is to conduct what may be called a compulsory arbitration, although the word compulsory does not seem to be used. The second sentence of Section 3 of the Act defines the issues to be determined by this compulsory arbitration procedure, namely, what disposition shall be made of those portions of the carriers' notices of November 2, 1959, identified as "use of firemen on other than steam power" et cetera, and that portion of the organizations' notices of September 7, 1960 identified as "minimum safe crew consist".

■■ In other words, the jurisdiction of the Board to conduct a compulsory arbitration is limited to the matters covered by the respective groups of notices insofar as they relate to the topics just defined. Clearly a railroad or labor organization that had no notice outstanding within the definition of the Act was not included in the arbitration. The conclusion seems inescapable, therefore, that the Union Railroad Company and its employees were not within the jurisdiction of the Arbitration Board and the award of the Board is not binding on them so far as any dispute between them is concerned.

It is argued, however, that there is nothing said in the Act that would require the notice of November 2, 1959 to have been outstanding and that the mere fact that one was served is sufficient to cause the jurisdiction of the Board to attach. The Court is unwilling to accept such a literal construction of the statute. The mere service of a piece of paper which is later withdrawn and, therefore, is not effective does not bring the matter within the terms of the statute. The Court construes the Act as referring to and including only those notices of November 2, 1959, that continued in effect, because those that did not continue in effect did not bring about the mediation efforts of the Railway Labor Act and because there was no threat of a strike

insofar as the Union Railroad was concerned.

We were admonished of old "that the letter killeth but the spirit giveth life". What is obviously meant by the statute is that the notices of November 2, 1959, or the notices of September 7, 1960, should have been outstanding throughout the period of mediation in order that the compulsory arbitration proceeding should attach to the specific parties. The Court is impressed by the fact that, as heretofore stated, counsel for the Board, who are members of the staff of the Department of Justice, candidly admit that the award does not comprehend the matters referred to in this action or to the Union Railroad Company.

■ Some objections are made as to the proper parties. The Court holds that the plaintiffs are real parties in interest within the meaning of Rule 17(a) of the Federal Rules of Civil Procedure and therefore have standing to maintain the suit.

■ The Court also overrules the objection of counsel for the Board to the effect that the Board and its members are not proper parties. It is true that when a trial court renders a decision and an appeal is taken from its judgment or its order, the trial court does not become a party to the appeal. The administrative process, however, operates in a different manner. Actions and proceedings to review orders and decisions of administrative agencies—and this Board is an administrative agency—generally are brought against the agency and make the agency a party defendant. For this purpose the Board continues in existence because under the statute it is subject to being recalled.

In view of these considerations the Court will render a declaratory judgment in favor of the plaintiffs in accordance with the foregoing decision.

Counsel may submit a proposed judgment.