The **AKRON & BARBERTON BELT RAILROAD CO.** et al., Plaintiffs,

v.

The **BROTHERHOOD OF RAILROAD TRAINMEN** et al., Defendants.

Civ. A. No. 142–66.

United States District Court
District of Columbia.
March 28, 1966.

Francis M. Shea, Richard T. Conway and Ralph J. Moore, Jr., Washington, D. C., for plaintiffs.

Milton Kramer and Martin W. Fingerhut, Washington, D. C., for defendants Brotherhood of Railroad Trainmen & Switchmen's Union.

HOLTZOFF, District Judge.

This action was brought by a large number of railroads against several organizations of railroad employees for the purpose of securing an adjudication as to reciprocal rights of the parties following the termination of the effective period of an award of a compulsory arbitration ordered by the Congress concerning two basic controversies between the employers and the employees, namely, the question whether firemen should be eliminated from diesel-powered locomotives in freight and yard service, and whether the size of train crews or "crew consist", as it is denominated in the parlance of the industry, may be reduced on various runs. The award of the Special Arbitration Board created under the authority of Congress is known as Award 282.

Two basic issues of law involved in this case were heard and determined separately in advance of the trial. The remaining issues, involving largely the application of these prior rulings to specific situations, then came on for trial. This opinion seeks to dispose of them. The evidence was introduced at the trial in the form of a detailed stipulation of facts, consisting of about 22 pages with numerous exhibits attached thereto. Counsel are to be highly commended for their admirable cooperation and meticulous and sedulous labors in preparing the stipulation and for proceeding in this highly effective and professional manner.

Although this action was brought originally for a permanent injunction as well as a declaratory judgment, counsel for the plaintiffs indicated, after the Court announced its earlier ruling on the two basic questions on March 3, 1966, D.C., 250 F.Supp. 691, that the plaintiffs would not press for an injunction at this time, but desired a declaratory judgment. Accordingly, this action then proceeded and will be determined as

an action for a declaratory judgment. We shall now take up the various problems presented and argued at the trial. The rulings about to be made must be considered in the light of the previous underlying basic opinion of March 3, 1966, which is to be deemed incorporated by reference.

■ During the effective period of Award 282, which terminated so far as the defendants in this action are concerned on January 25, 1966, numerous reductions in train crews were authorized, either by agreements or by Special Boards of Adjustments created under Article III of Award 282. About 90 such awards of Special Boards are listed in the stipulation. In its opinion of March 3, 1966, this Court ruled that a new status was created as a result of those awards and that this status is to be maintained after the expiration of the effective period of Award 282 and may be changed only by agreement or by serving 30-day notices under Section 6 of the Railway Labor Act (45 U.S.Code § 156) and then pursuing step by step, the remedies provided by that statute. During the same period, as has been just stated, a number of agreements have been made relating to the composition and size of train crews, embodying a provision that the agreements continue in effect to the same extent as if they were awards of Special Boards of Adjustment created pursuant to Article III, or Section III as it is sometimes called, of Award 282. Accordingly, it is the opinion of the Court that the same consequences attach to these agreements as to the awards of the Special Boards. The agreements create a new status, which may not be altered except by contract or in the manner prescribed by the Railway Labor Act, as has just been stated.

This ruling obviously likewise applies to similar agreements which include a provision that they shall continue in effect until changed in accordance with the provisions of the Railway Labor Act. This conclusion also governs those agreements that provide that they shall continue in effect until January 25, 1966 and thereafter. Some of the agreements are silent on the question as to how long they should continue in force. The same consequences attach to them. In other words, they also create a new status that may not be modified after the expiration of Award 282 except by further agreement or by invoking the remedies provided by the Railway Labor Act, as already indicated.

There are numerous agreements referring to Award 282, which are expressly made dependent, in one way or another, in their duration, on the effective period of the basic award. Irrespective of the precise phraseology employed in each instance, they must be deemed to have been executed in the light and in contemplation of Award 282 and as having the same effect as awards of Special Boards of Adjustment created under that award. It follows, hence, that the same consequences attach to them as to the agreements already discussed.

This conclusion extends to agreements containing such provisions as that the agreement "shall remain in effect until January 25, 1966, as provided by Section IV, Duration of Arbitration Award No. 282"; or "shall remain in effect only for the duration of award of Arbitration Board 282"; or that "neither party shall serve notices under the provisions of Arbitration Award No. 282 for any change in crew consists prior to January 25, 1966"; or "an agreement in accordance with the terms of the award of Arbitration Board 282"; or that "this agreement shall remain in effect until January 25, 1966, with the understanding that neither party shall serve notices under the provisions of Arbitration Award No. 282 for any change in crew consists prior to January 25, 1966"; or "that this agreement will continue in effect in accordance with Section IV, Duration of Award of Arbitration Board 282". It is clear that all of these agreements were adjusted to the duration of the effective period of Award 282. The reasonable construction of these agreements, in the opinion of the

Court, is that they have the same effect as awards of the Special Boards of Adjustment created under Award 282, and that the same consequences attach, namely, that a new status is created, which cannot be changed except in the manner already discussed.

It will be recalled that in practically every case the original controversy had its inception in notices served by carriers and counter-notices served by organizations of employees. There are a few cases, however, in which notices were served only by organizations of employees. The Court is of the opinion that they too come within the purview of Award 282 and therefore the present ruling applies to them.

■ In Division 700, Brotherhood of Locomotive Engineers v. National Railway Labor Arbitration Board 282, 224 F. Supp. 366, this Court held that a carrier was not affected by Award 282 if neither the carrier nor any of the organizations of employees served any notices under the Railway Labor Act in respect to employees of that carrier. This Court in the course of its opinion made the following observations (p. 368):

> "What is obviously meant by the statute [referring to the statute creating Board 282] is that the notices of November 2, 1959 [meaning the carriers' notices], or the notices of September 7, 1960 [meaning the employees' notices], should have been outstanding throughout the period of mediation in order that the compulsory arbitration proceeding should attach to the specific parties."

It will be observed that the Court remarked that in order that Award 282 might be applicable, it was necessary that either one of the two groups of notices should have been outstanding and not that both were required. To be sure, this observation is a *dictum*, but it expresses the view of this Court, and the Court now rules, that Award 282 applies in the case of any carrier as to which either one of the two sets of notices were outstanding.

The Southern Railway System is in a peculiar position. Its component units were not parties to the proceedings before Arbitration Board 282 and as a result would not have been bound by its award. They entered into an agreement, however, with the Brotherhood of Railroad Trainmen on July 26, 1965, reducing the size of various yard crews and crews on numerous branch lines. This agreement provided in Paragraph 5 that:

> "This agreement shall become effective July 26, 1965 and shall continue in effect until January 25, 1966 and thereafter, to the same extent as if it were an award of a Special Board of Adjustment rendered in pursuance of Section III, Consist of Road and Yard Crews, of the Award of Arbitration Board No. 282."

■ The conclusion necessarily follows that the same consequences attach to this agreement as do to the agreements already discussed.

■ A different result must be reached in respect to three agreements that contain an express provision to the effect that upon their expiration the prior rule as to "crew consist" would again be in full force and effect. It is clear that in these instances the express intention of the parties was to preclude the creation of a new status, and to limit the reduction of size of crews to a specific period. In these cases the Court is of the opinion that the carriers are obligated to restore the crews to their pre-existing size. These crews may be reduced only by further agreement or by proceedings under the Railway Labor Act initiated by the service of notices under Section 6, 45 U.S.C. § 156.

■ In some instances proceedings were pending but not completed before Special Boards of Adjustment when the effective period of Award 282 came to an end on January 25, 1966. The question is presented whether these proceedings may continue subsequently to that date and final awards made later. The problem is analogous to that which arises in the event of a repeal of a statute con-

ferring jurisdiction on a court. Under such circumstances the court is not only deprived of authority to entertain future actions of the type covered by the jurisdictional act that has been repealed, but also loses power to proceed in those cases covered by the act that were pending on the effective date of repeal. This principle was established in the historic case of Ex parte McCardle, 7 Wall. 506, 19 L. Ed. 264. There are numerous other cases enunciating and applying the same principle. Among them are Railroad Company v. Grant, 98 U.S. 398, 25 L.Ed. 231; Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409; Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786. In Railroad Company v. Grant, supra, Mr. Chief Justice Waite stated that:

> "It is * * * well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law."

Such a frustration is frequently prevented by the inclusion of an express saving or reservation clause in the legislation providing for repeal. No such clause is found either in the Act providing for the creation of the Arbitration Board or in the Award of the Board. It is not unlikely that the Board was of the opinion that it was without power to include such a reservation or saving clause in its Award, in view of the peremptory cut-off date contained in the statute. The conclusion is inescapable that all proceedings pending before Special Boards of Adjustment came to an end on January 25, 1966, and that no effective award could be made in any of them subsequently to that date.

The Court is not unmindful of the fact that underneath the prosaic questions of a somewhat technical nature, seemingly, upon which it has had to rule, there are human problems and human dramas. The Court is not oblivious of the fact that there are many employees and their families who have suffered some hardship and possibly considerable hardship,

it is to be hoped of a temporary nature. This unfortunate situation is part of a much larger picture. As a result of vast far-reaching technological improvements, inventions and discoveries coming along within a short period of time, we have been going through an era that is somewhat analogous and akin to the Industrial Revolution in England of 150 years ago, although not quite as intense in degree. The period of transition creates difficulties for individuals, without doubt.

Fortunately, we have developed a social consciousness and compassion for our fellow man that did not exist in England 150 years ago. Many steps have been taken effectively, to lighten the burden on individual employees and their families during the period of transition. For example, the government has provided for unemployment compensation and other forms of social security. There are various agreements between labor unions and employers that tide employees over a critical period. Board 282 has made an outstanding and notable contribution in that field. Some hardships will remain, without a doubt. The Court is not unaware of that fact.

One of the problems is found in the fact that there are many employees who are unwilling to learn and acquire new skills or shift occupations or are reluctant to change their homes. The old pioneer spirit seems to have been dampened. The quest for adventure that was exhibited by men and women who crossed the prairies in covered wagons seems to have been diminished to a large degree. The spirit of the immigrant who looked around and was willing to take any job to make a living does not seem to exist to the same extent. We must realize, however, that we are dealing with human personalities who have all the frailties, as well as all the virtues of humanity. We are not dealing with automatons.

The Court has had all these considerations in mind. It fully realizes that some of its rulings will necessarily cause some suffering. The Court is gratified, however, to be cognizant of the fact that the

award of Board 282 has eliminated or reduced a great many hardships that otherwise might have followed.

The stipulation of facts entered into by the parties, the opinion of this Court filed on March 3, 1966, and a transcript of the present decision, will together constitute the findings of fact and conclusions of law. Counsel may submit a judgment embodying the rulings made in these two opinions.